UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT THAYER, SHARON )
BROWNSON and TRACY NOVICK, )
        Plaintiffs )
)
v. )   C.A. NO. 13-40057-TSH
)
CITY OF WORCESTER, )
        Defendant )

## CITY OF WORCESTER'S OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**I.  Introduction**

Plaintiffs Robert Thayer, Sharon Brownson and Tracy Novick have filed suit alleging that two recently adopted City of Worcester Ordinances violate the First Amendment to the United States Constitution, an Ordinance Relative to Pedestrian Safety, City of Worcester Revised Ordinances of 2008, Amendment No. 9840, c. 13, § 77(a) (Pedestrian Safety Ordinance), (Exh. 2), and an Ordinance Prohibiting Aggressive Begging, Soliciting and Panhandling in Public Places, City of Worcester Revised Ordinances of 2008, Amendment No. 9839, c. 9, § 16 (Aggressive Panhandling Ordinance), (Exh. 3). (Collectively, Ordinances.) At the time of filing Plaintiffs' Complaint, Plaintiffs also filed a motion for a preliminary injunction. Defendant, City of Worcester (City), hereby opposes Plaintiff's motion for a preliminary injunction, Doc. No. 2, on the grounds that Plaintiffs have failed to satisfy the necessary criteria to grant injunctive relief.

**II.  Factors for a Preliminary Injunction**

In determining whether to issue a preliminary injunction the Court must weigh four factors: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant

if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." Charlesbank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). The "sine qua non of this four-part inquiry is likelihood of success on the merits." New Comm Wireless Services, Inc., v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Jean v. Massachusetts State Police, 492 F.3d 24, 27 (1st Cir. 2007). Here, Plaintiffs fail to establish a likelihood of success on the merits of their facial challenge to the constitutionality of the Worcester Ordinances.

    A. <u>Plaintiffs Cannot Establish a Likelihood of Success on the Merits of their Claim.</u>

        1. *Plaintiffs fail to establish standing to maintain their suit*.

Plaintiffs have not been arrested for a violation of the Ordinances; therefore, their challenge is not an "as applied" challenge, but rather, a facial challenge to the Ordinances. Thus, at issue at the outset is whether Plaintiffs have the requisite standing to proceed with their action. For standing to challenge the constitutionality of a particular municipal ordinance, Plaintiffs must show an objectively reasonable possibility that the Ordinances would be applied to their own activities. Sullivan v. City of Augusta, 511 F.3d 16, 25 (1st Cir. 2007). Plaintiffs, Mr. Thayer and Ms. Brownson, state in their declarations, (Doc. Nos. 6 and 7), that they are both homeless, live under a bridge together and typically stand on a sidewalk, holding a sign, requesting donations. Plaintiff, Ms. Novick, is a current City School Committee member who states in her declaration, (Doc. No. 8), that she will seek re-election in the fall, and, in seeking election the School Committee in 2009 and 2011, often stood on medians and in traffic circles holding campaign signs. The Pedestrian Safety Ordinance prohibits a person, "after having been

2

given due notice warning by a police officer" from "walking or standing on any traffic island or upon the roadway of any street or highway, except for the purpose of crossing the roadway at an intersection or designated crosswalk or for the purpose of entering or exiting a vehicle at the curb or for some other lawful purpose." (Exh. 2.) Therefore, Mr. Thayer and Ms. Brownson, by standing on the sidewalk and not in the roadway or on a traffic island, would not be in violation of the Pedestrian Safety Ordinance. Mr. Thayer and Ms. Brownson would also not be in violation of the Aggressive Panhandling Ordinance if they are merely standing silently on the sidewalk holding a sign and otherwise complying with the Ordinance's prohibition against aggressive soliciting, begging or panhandling within 20 feet of certain establishments such as outdoor restaurant seating, mass transportation facility or automated teller machine. (Exh. 3.)

Plaintiffs fail to satisfy the additional core Article III standing principle "injury-in-fact" requirement. See Sullivan, 511 F.3d at 25.

> In the area of freedom of expression, an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable[, but the plaintiff] still must satisfy the requirement of "injury-in-fact" and whether it can be expected satisfactorily to frame the issues in this case (i.e., its case must be "ripe.")

Id. (quoting Sec'y of State of Maryland v. Joseph H. Munson Co., 467 U.S. 947, 956-57 (1984)). "Injury-in-fact" is established when there is "an invasion of a legally protected interested which is (a) concrete and particularized … and (b) 'actual or imminent, not conjectural or hypothetical.'" Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Here, Plaintiffs fail to establish an objectively reasonable possibility they will suffer an injury that is not hypothetical. As stated, none of the Plaintiffs have been arrested or found in violation of the Ordinances. Indeed, in the soliciting conduct described by Mr. Thayer and Ms. Brownson, standing on a sidewalk holding a sign, they would not be in violation of the Ordinances. Ms.

3

Novick states that she has in the past stood on traffic islands to campaign, if a police officer warned her that the location in which she stood was in violation of the Pedestrian Safety Ordinance and she refused to move, she could be subject to enforcement action. However, Ms. Novick does not establish that she cannot move her campaigning activity to a location that does not violate the Pedestrian Safety Ordinance. Ms. Novick cannot establish any personal injury from the Aggressive Panhandling Ordinance. Thus, Plaintiffs' alleged injuries as a whole are hypothetical, are not ripe, and, thus, Plaintiffs fail to establish the requisite standing to maintain their challenge to the Ordinances.

*2. Plaintiffs fail to show a meritorious constitutional challenge to the Ordinances.*

If Plaintiffs are found to have the requisite standing to proceed, the merits of the case must then be examined in accordance with the constitutional challenge. Facial challenges to laws are disfavored because they risk premature interpretation of laws on a minimal record, interfere with judicial restraint by requiring the court to rule on hypothetical and vague constitutional questions and risk interfering with the democratic process by invalidating laws enacted by elected representatives. Hightower v. City of Boston, 693 F.3d 61, 76-77 (1st Cir. 2012). A plaintiff will not prevail in a facial challenge if a law "has a plainly legitimate sweep." McCullen v. Coakley, 571 F.3d 167, 174 (1st Cir. 2009) (quoting Washington State Grange v. Washington State Repub. Party, 552 U.S. 442 (2008)). "A facial challenge to a legislative Act is ... the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." Pharm. Research & Mfrs. of Am. v. Concannon, 249 F.3d 66, 77 (1st Cir.2001) (internal quotation marks omitted). In a facial challenge to the overbreadth and vagueness of a law, the first consideration is "whether the enactment reaches a substantial amount of constitutionally-protected conduct." Whiting v. Town

of Westerly, 942 F.2d 18, 21 (1st Cir. 1991). While the Aggressive Panhandling Ordinance implicates "communicative activity protected by the First Amendment," Benefit v. City of Cambridge, 424 Mass. 918, 922 (1997), the Pedestrian Safety Ordinance has no such implications.

a. **Pedestrian Safety Ordinance**

Plaintiffs cannot satisfy the requisite test for a facial challenge to the Pedestrian Safety Ordinance, which does not implicate constitutional rights, but public safety interests.

> [A] law which does not involve constitutionally-protected conduct and, therefore, surmounts the overbreadth test, may nevertheless be challenged as on its face unduly vague, in violation of due process. For such a facial challenge to succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications. From this requirement it follows that <u>a plaintiff who engages in conduct that is clearly proscribed by the statute cannot complain that the statute is vague on its face</u> nor challenge the vagueness of the law as applied to the conduct of others.

Whiting, 942 F. 2d at 22. (Emphasis added.)

The Pedestrian Safety Ordinance is not unduly vague as it specifically prohibits walking or standing in a traffic island or upon a roadway outside of a crosswalk, after due notice warning by a police officer. (Exh. 2.) The term "traffic island" is clearly defined in the Ordinance. Id. Ms. Novick expresses her concern that she will not be able to campaign in traffic medians as she had prior to the adoption of the Pedestrian Safety Ordinance. (Doc. No. 8, ¶ 5.) Ms. Novick recognizes that she previously campaigned in places that now fall within the scope of the Pedestrian Safety Ordinance. Likewise, Mr. Thayer and Ms. Brownson state that they recognize that they could be in violation of the Ordinance if they are in the roadway or in a median. (Doc. No. 6, ¶¶ 7, 11, 13; Doc. No. 7, ¶¶ 8-10.) Therefore, Plaintiffs have engaged in conduct that is clearly proscribed by the Pedestrian Safety Ordinance and cannot now complain that the Ordinance is vague on its face nor challenge the vagueness of the Ordinance as applied to the

conduct of others. See Whiting, 9424 F. 2d at 22. Plaintiffs, thus, cannot prove that the Pedestrian Safety Ordinance is impermissibly vague in all its applications and their challenge to the Pedestrian Safety Ordinance does not have a likelihood of success on its merits.

b. **Aggressive Panhandling Ordinance**

As stated, the challenge to the Aggressive Panhandling Ordinance the law implicates the First Amendment; however, even such a freedom as freedom of speech "must be balanced against the government's legitimate interests in protecting public health and safety." McCullen, 571 F. 3d at 174. Speech restrictions are evaluated along a continuum, where at one end, the government restrictions on content of speech may be impermissible. Id. at 175.

> Further along the continuum are laws that do not regulate speech per se but, rather, regulate the time, place, and manner in which speech may occur. Because such time-place-manner restrictions are by definition content-neutral, they tend to burden speech only incidentally; that is, they burden speech for reasons unrelated to either the speaker's viewpoint or the speech's content.

Id. Regulation of this type of speech is the more relaxed "intermediate scrutiny," which will be upheld as long as it is justified without focus on the content of the speech, is "narrowly tailored to serve a significant governmental interest," and there are alternative means for communication of the information. Id. (quotations and citations omitted.) The test for content neutrality "does not require proof that the [government's] response to a perceived problem be the only solution or even the best solution; it simply requires that the evidence supports a conclusion that the regulation is in service to a legitimate governmental interest unrelated to expressive content." Id. at 177.

In this case, in proposing the Aggressive Panhandling Ordinance, City Manager Michael V. O'Brien indicated that the City had made efforts to address the homeless situation in the City, which included outreach workers who spoke to those panhandling to discover their reasons for

6

panhandling, to determine what resources were needed and to connect them with social service agency assistance. (See Exh. 4.) However, it also became clear that there was a public safety issue with those panhandling. Id. "It is clear that there is another side to this issue and that is the issue of public safety – when individuals are walking in and out of traffic to collect money in intersections, traffic islands and roadways." Id. at 2. Therefore, the City Manager proposed the Aggressive Panhandling Ordinance, which does not regulate per se what a person says in asking for money, but regulates the time, place and manner it is said. The Ordinance is content-neutral and burdens speech only incidentally. Plaintiffs discuss that the Aggressive Panhandling Ordinance does not strictly apply to the poor or homeless, but restricts solicitation such as that which occurs after dark or in a way that interferes with traffic, for example, which shows its content neutrality. In Benefit, G. L. c. 272, § 66 was found to be unconstitutional because it instituted broad ban on begging that "by its terms makes distinctions based on the content of the message conveyed." Benefit, 424 Mass. at 924. However, G. L. c. 85, § 17A, which prohibits solicitation from vehicles on public ways, similar to the content-neutral public safety interest in the City's Aggressive Panhandling Ordinance, has not been found to be unconstitutional. As in McCullen, the time, place and manner restrictions on panhandling in an attempt to steer the panhandling homeless to social service assistance, and to alleviate the public safety concerns of panhandlers approaching citizens at particular locations and in traffic, may not be the only solution or the best solution to the homeless or panhandling problem in the City, but the Ordinance is narrowly tailored to serve legitimate governmental interests. Therefore, Plaintiffs are not likely to succeed in their challenge to the constitutionality of the Aggressive Panhandling Ordinance.

B.  Remaining Factors for the Preliminary Injunction Test

Although Plaintiffs cannot establish a likelihood of success on the merits of their case, the additional factors will be briefly discussed:  "(2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." Charlesbank Equity Fund II, 370 F.3d at 162.  Plaintiffs have not shown an injury-in-fact as discussed, supra, and so there is no potential for irreparable harm if the injunction is denied.  Plaintiffs can conduct their solicitation and campaigning in areas and ways that are not violative of the Ordinances.  Likewise, there is no actual hardship to Plaintiffs if the injunction is denied, while there would be a public safety danger in restricting enforcement action if someone is in violation of the Ordinances.  Further, there is a public interest in maintaining the Ordinances to protect public safety, and to further the goals of addressing the panhandling and homeless situation in the City.

## III.    Conclusion

Plaintiffs have failed to establish a likelihood of success on the merits of their constitutional challenge to the Pedestrian Safety and Aggressive Panhandling Ordinances, as well as the additional criteria necessary for the granting of a preliminary injunction.

WHEREFORE, the City of Worcester hereby opposes Plaintiffs' motion for a preliminary injunction, which should be denied.

CITY OF WORCESTER

By its attorneys,
David M. Moore
City Solicitor

*/s/ Wendy L. Quinn*
Wendy L. Quinn (BBO #653954)
Assistant City Solicitor
City Hall, Room 301
455 Main Street
Worcester, MA 01608
(508) 799-1161
quinnwl@worcesterma.gov

## CERTIFICATE OF SERVICE

I, Wendy L. Quinn, hereby certify that, on this 30th day of May, 2013, the within City of Worcester's Opposition to Plaintiffs' Motion for Preliminary Injunction was served upon all counsel of record through this Court's electronic filing system as identified on the Notice of Electronic Filing.

*/s/ Wendy L. Quinn*
Wendy L. Quinn
Assistant City Solicitor
