UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

ROBERT THAYER, SHARON BROWNSON,
and TRACY NOVICK,

        Plaintiffs,

   v.

CITY OF WORCESTER,

        Defendant.

Civil Action No. 13-40057-TSH

**PLAINTIFFS' NINTH NOTICE OF RECENT AUTHORITY RELEVANT TO THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiffs Robert Thayer, Sharon Brownson, and Tracy Novick submit this notice of new authority from Judge Woodlock issued after briefing on the parties' cross-motions for summary judgment was completed. Judge Woodlock's decision, *McLaughlin v. City of Lowell*, No. 14-cv-10270 (Oct. 23, 2015), is attached as Exhibit 1 to this notice.

As discussed further below, Judge Woodlock's decision addressed a Lowell ordinance that, like Worcester's Section 16, prohibits "aggressive panhandling," and it declared the law unconstitutional in its entirety. Judge Woodlock's decision provides further confirmation that, in light of the "evolving case law from the Supreme Court and the First Circuit," *McLaughlin*, slip op. at 1, Section 16 is plainly unconstitutional.

At this point, the First Circuit has affirmed a decision striking down a law effectively identical to Worcester's Section 77(a),[1] and Judge Woodlock has struck down a ban on

---

[1] As Plaintiffs explained in their Seventh Notice of Recent Authority, the First Circuit recently held that a law that paralleled Section 77 (because it placed all of a city's traffic medians off-limits to First Amendment

"aggressive panhandling" that was copied from Worcester's Section 16. There now can be no doubt that Plaintiffs have at least a reasonable likelihood of prevailing on their First Amendment challenges to the two Worcester laws. To the extent the Court requires more time to rule on the pending motions for summary judgment, Plaintiffs urge the Court at a minimum to act on their long-pending motion for preliminary injunction against Worcester's enforcement of Sections 16 and 77(a), in order allow the citizens of Worcester to enjoy the same First Amendment protections as the citizens of Lowell.

* * *

The Lowell law that Judge Woodlock addressed was "almost entirely derived" from Worcester's Section 16, "even down to typos within the ordinance."[2] For example, the Lowell ordinance uses the same basic definition of "panhandling" as Section 16, applying its prohibition to:

> [t]he solicitation of any item of value, monetary or otherwise, made by a person, requesting an immediate donation of money or exchange of series; or any person attempting to sell an item for an amount far exceeding its value, or an item which is already offered free of charge to the general public, and under circumstances a reasonable person would understand that the purchase is in substance a donation.

Lowell Code § 222-15(A).

The Lowell law also defines panhandling in an "aggressive manner" largely the same as Section 16—notably, it excluded Section 16's ban on soliciting at night, and Section 16's establishment of buffer zones around "places of public assembly," but otherwise it was the same:

> (1) Approaching or speaking to a person, or following a person before, during or after soliciting if that conduct is intended or is likely to cause a reasonable person to fear bodily harm to oneself or to another or damage

---

expression) was unconstitutional on its face. *See Cutting v. City of Portland*, __ F.3d __, 2015 WL 5306455 (1st Cir. Sept. 11, 2015).

[2] City of Lowell's Opp'n to Pls.' Mot. for Prelim. Inj., *McLaughlin v. City of Lowell*, No. 14-cv-10270 (D. Mass. 2015), ECF No 30.

(2) Continuing to engage in panhandling toward a person after the person has given a negative response to such soliciting;

(3) Intentionally touching or causing physical contact with another person or their property without that person's consent;

(4) Intentionally blocking or interfering with the safe or free passage of a pedestrian or vehicle by any means, including unreasonably causing a pedestrian or vehicle operator to take evasive action to avoid physical contact;

(5) Using violent or threatening language and/or gestures toward a person or toward his or her property, which are likely to provoke an immediate violent reaction from that person;

(6) Following a person with the intent of asking that person for money or other things of value;

(7) Panhandling toward anyone who is waiting in line for tickets, for entry to a building or for any other purpose;

(8) Panhandling in a manner with conduct, words or gestures intended or likely to cause a reasonable person to fear immediate bodily harm, danger or damage to or loss of property or otherwise be intimidated into giving money or any other thing of value;

(9) Panhandling in a group of two or more persons in an intimidating fashion;

(10) Panhandling within 20 feet of the entrance to, or parking area of, any bank, automated teller machine, automated teller machine facility, check-cashing business, mass transportation facility, mass transportation stop, public restroom, pay telephone or theater, or any outdoor seating area of any cafe, restaurant or other business.

*Id.*

* * *

Judge Woodlock held that because the Lowell law singles out speech requesting immediate donations, it is "plainly content-based" under *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). *McLaughlin*, slip op. at 11, 24-25. He noted that *Reed* made "earlier cases" addressing whether panhandling regulations were content-based "of limited continuing relevance." *Id.* at 11-12. And he reasoned that Lowell's law is content-based "on its face," because it subjects solicitations for immediate donations to unique burdens that do not apply to speech asking, for example, individuals to sign petitions or to donate "tomorrow, but not today." *Id.* at 11.

3

Judge Woodlock explained that, as a content-based law, Lowell's aggressive panhandling ordinance is s subject to strict scrutiny, which it could survive only if the city proved that it is "'the least restrictive means of achieving a compelling [government] interest.'" *Id.* at 17 (quoting *McCullen v. Coakley*, 134 S. Ct. 2518, 2530 (2014)). He then held that Lowell's ordinance could not satisfy this "exacting standard." *Id.* He divided the provisions in Lowell's ordinance—which are a subset of those in Worcester's Section 16—into three categories: (1) prohibitions that duplicate existing laws but treat panhandling as an aggravating element, such as laws criminalizing panhandling while engaged in assault, battery, or traffic obstruction; (2) prohibitions on supposedly "coercive" practices such as continuing to solicit after receiving a negative response or soliciting in groups in an "intimidating fashion"; and (3) prohibitions on panhandling in numerous areas throughout the city, including "within a twenty feet buffer zone around a bank, ATM, check-cashing business, mass transportation facility, . . . theater, or outdoor seating area," as well as from anyone waiting in line. *Id.* at 4-6. Judge Woodlock held that the provisions in all three categories failed strict scrutiny.

Beginning with the duplicative provisions, Judge Woodlock held they were impermissible under *RAV v. City of St. Paul*, 505 U.S. 377 (1992). *McLaughlin*, slip op. at 27-30. He explained that the city "may not deem criminal activity worse because it is conducted in combination with protected speech." *Id.* at 30. He then turned to the second category of restrictions and held that they also failed strict scrutiny. *Id.* at 30-34. Judge Woodlock concluded that the ban on panhandling after a negative response was "not the least restrictive means available" to serve the city's interests, because panhandlers have a "right to more than one shot at getting their message across" if they do so peacefully, and the city could have adopted a narrower law that targeted truly threatening behaviors like "follow[ing] [a] person over a great

4

distance" or engaging in harassment. *Id.* at 30, 31. Judge Woodlock also rejected the prohibition on panhandling in a group "in an intimidating manner," as the court observed that such a provision "infringes upon not only the First Amendment's protection of speech, but also of assembly." *Id.* at 32. According to Judge Woodlock, Lowell could no more stop panhandlers from engaging in protected expression in groups than it could "tell a pair of Mormon missionaries that they must knock on doors alone." *Id.* at 33-34.

Finally, Judge Woodlock struck down the third category of Lowell's "aggressive panhandling" provisions, which, like Section 16, "defines all panhandling in certain locations"—the buffer zones—as "aggressive and therefore prohibited." *Id.* at 34. He concluded that by closing off these locations to solicitation for immediate contributions, the city "fail[ed] to use the least restrictive means available" to further its asserted safety interests. *Id.* at 34-38. In several of the locations—e.g., bus stops, lines, and outdoor seating at restaurants—Judge Woodlock stated that there was no evidence of any safety risks. *Id.* at 34-35, 36-37. Moreover, Judge Woodlock recognized, the law prohibited speech by organized charitable groups, including "firemen and Girl Scouts," in "traditional fundraising locations" even though there was no reason to believe they posed any threat. *Id.* at 36. He acknowledged there were a handful of covered locations where safety risks might exist (e.g., near ATMs). *Id.* at 35. But he held that even those restrictions failed strict scrutiny, because the blanket bans on solicitation failed to create exceptions for even "the silent and passive holding of a sign" to solicit funds. *Id.* Judge Woodlock reasoned that "[a]n ordinance with a sign-holding exception would clearly restrict less speech, and would do so without any meaningful loss in public safety." *Id.* at 36.

\* \* \*

Judge Woodlock's decision concluding that Lowell's "aggressive panhandling" law violates the First Amendment demonstrates that Worcester's virtually identical ordinance also is unconstitutional. Section 16 uses the same definition as Lowell's law, extending its restrictions to speech soliciting "an immediate donation of money or other thing of value." R.O. c. 9, § 16(c). As Judge Woodlock explained, such a law is "plainly content-based under current Supreme Court guidance" because, "[o]n its face," the ordinance "distinguishes solicitations for immediate donations" from all other expression. *McLaughlin*, slip op. at 11; *see also* Mem. of Law in Supp. of Pls.' Mot. for Summ. J. at 6-7, ECF No. 83 ("Pls.' MSJ Mem."); Pls.' Third Notice of Recent Authority, ECF No. 101 (discussing *Reed*). Section 16 is therefore subject to strict scrutiny. And for the reasons articulated by Judge Woodlock, the ordinance cannot survive. Section 16 applies in all of the same circumstances and locations as Lowell's ordinance, and it suffers from all of the same flaws, including by extending to even passive sign holding. *See* Pls.' MSJ Mem. at 9, 12-14. Indeed, the only material way in which Section 16 and Lowell's "aggressive panhandling" law differ is the fact that Section 16 sweeps more *broadly*, because it includes a restriction making it illegal to solicit for contributions anywhere in Worcester "after dark," and its buffer zones also sweep in all places of "public assembly." *Id.* at 2-3, 12-13.

\* \* \*

In the past two months, the First Circuit and another judge in this District have held that carbon copies of Section 77(a) and Section 16 violate the First Amendment. This Court should follow the "evolving case law," *McLaughlin*, slip op. at 1, and hold that Section 16 is

6

unconstitutional.  The Court should also grant Plaintiffs' request for preliminary and permanent injunctive relief without delay.

Dated:  October 26, 2015

>/s/  Kevin P. Martin
> Kevin P. Martin (BBO# 655222)
> Mark E. Tully (BBO# 550403)
> Yvonne W. Chan (BBO# 669223)
> Todd Marabella (BBO# 682525)
> GOODWIN PROCTER LLP
> 53 State Street
> Boston, Massachusetts 02109
> Tel.: 617.570.1000
> Fax.: 617.523.1231
> KMartin@goodwinprocter.com
> MTully@goodwinprocter.com
> YChan@goodwinprocter.com
> TMarabella@goodwinprocter.com
>
> Matthew R. Segal (BBO# 654489)
> Sarah R. Wunsch (BBO# 548767)
> American Civil Liberties Union
>     of Massachusetts
> 211 Congress Street
> Boston, Massachusetts 02110
> Tel.: 617.482.3170
> Fax.: 617.451.0009
> MSegal@aclum.org
> SWunsch@aclum.org
>
> *Attorneys for Plaintiffs Robert Thayer,*
> *Sharon Brownson, and Tracy Novick*

**CERTIFICATE OF SERVICE**

      I, Kevin P. Martin, do hereby certify that the foregoing document is being filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on October 26, 2015.  The foregoing document will be available for viewing and downloading from the ECF system.

                                                        /s/  Kevin P. Martin