UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

---

ROBERT THAYER, SHARON BROWNSON,
and TRACY NOVICK,

          Plaintiffs,

      v.

CITY OF WORCESTER,

          Defendant.

Civil Action No. 13-40057

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

Under 42 U.S.C. § 1988(b), Federal Rule of Civil Procedure 54(d), and this Court's November 9, 2015 Order ("11/9/15 Order"), Plaintiffs move for an award of reasonable attorneys' fees and litigation expenses. On November 9, 2015, this Court held that two City of Worcester ("City") ordinances, R.O. c. 9, § 16 ("Section 16") and R.O. c. 13, § 77(a) ("Section 77(a)") (collectively, "the Ordinances"), were unconstitutional on their face because they violate the rights of Plaintiffs and others to engage in speech protected by the First Amendment.

As the prevailing parties, Plaintiffs are entitled under Section 1988(b) to their reasonable attorneys' fees and litigation expenses. As discussed in greater detail below, Plaintiffs achieved a victory on their First Amendment claims in a landmark decision that will inform state and local legislatures nationwide as they consider whether to adopt laws regulating speech-related activities. Plaintiffs' success was due in part to the specialized expertise and experience Plaintiffs' counsel brought to bear in representing Plaintiffs in multiple steps in this proceeding:

before this Court, the United States Court of Appeals for the First Circuit, and the United States Supreme Court.   Accordingly, Plaintiffs' counsel seek a reasonable fee award compensating them for their costs and expenses incurred in achieving this outcome.

I.      **PLAINTIFFFS ARE ENTITLED TO ATTONEYS' FEES AS THE PREVAILING PARTIES, AND THEIR COUNSEL'S FEES ARE REASONABLE**

Plaintiffs were represented by attorneys from Goodwin Procter LLP and the American Civil Liberties Union of Massachusetts ("ACLU of Massachusetts").   Plaintiffs' counsel, as described in greater detail below, focus their practice in part on constitutional litigation and have developed specialized expertise in litigating First Amendment claims.   The ACLU of Massachusetts engaged Goodwin Procter to assist it on a *pro bono* basis in challenging the constitutionality of the Ordinance on behalf of Plaintiffs.   After paying its out-of-pocket expenses, Goodwin Procter has committed to donate the remainder of any fee award (other than fees incurred in filing this petition) to the ACLU of Massachusetts to further its mission.   *See* December 23, 2015 Affidavit of Kevin P. Martin ¶ 19 ("Martin Aff.").

It is well-settled that in civil rights cases a "reasonable" fee should be a "fully compensatory fee," *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), and should be "calculated on the basis of rates and practices prevailing in the relevant market." *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989).   The First Circuit has held that "awards in favor of prevailing civil rights plaintiffs are virtually obligatory." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 293 (1st Cir. 2001).   Determining fee awards under Section 1988(b) "requires a two-part inquiry: 1) whether the plaintiff is a prevailing party, and 2) if the plaintiff is a prevailing party, what constitutes a reasonable fee award." *Boston's Children First v. City of Boston*, 395 F.3d 10, 14 (1st Cir. 2005).

Here, there is no question that Plaintiffs are the "prevailing party."  The relief they sought—invalidation of Sections 16 and 77(a) as an unconstitutional restriction on their free speech rights—was granted by this Court.  Plaintiffs' requested fees are also reasonable, because they are consistent with prevailing market rates, commensurate with counsel's experience and expertise, and reflective of the substantial investment that was required in a case that Plaintiffs litigated all the way up to the Supreme Court—where they obtained a favorable judgment— before ultimately prevailing before this Court.

A.      **Plaintiffs Secured a Complete Victory on Their First Amendment Claims, Which Invalidated the Ordinance in Its Entirety**

Plaintiffs are two Worcester residents who have historically engaged in the solicitation of donations within the City, and a Worcester school committee member.  *See* 11/9/15 Order at 17- 19.  In January 2013, the City adopted the Ordinances as part of a coordinated strategy to reduce panhandling.  *See id.* at 9-12.  Both Ordinances restrict speech in a traditional public forum—a class of places the Supreme Court has affirmed "occupy a 'special position in terms of First Amendment protection' because of their historic role as sites for discussion and debate." *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014).

Plaintiffs initially moved for a preliminary injunction in this Court.  When the Court denied their motion, Plaintiffs diligently and effectively pursued their appellate rights.  Plaintiffs first filed suit in the First Circuit—obtaining an injunction pending appeal with respect to Section 16's ban on solicitation "after dark."  *See Thayer v. City of Worcester*, 755 F.3d 60, 73 n.7 (1st Cir. 2014).  After a panel of the First Circuit affirmed this Court's denial of a preliminary injunction with respect to the remaining portions of the Ordinances and the court denied Plaintiffs' petition for rehearing en banc, Plaintiffs filed a petition for certiorari with the Supreme

Court.   On June 29, 2015, the Supreme Court granted Plaintiffs' petition, vacated the First

Circuit's decision upholding the denial of the preliminary injunction, and remanded the case to

the First Circuit for further consideration in light of the Supreme Court's intervening decision in

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), a form of relief that Plaintiffs expressly sought

in their petition for certiorari.   *See Thayer v. City of Worcester*, 135 S. Ct. 2887 (2015); Petition

for a Writ of Certiorari, *Thayer v. Worcester*, No. 14-428 (U.S.), 2014 WL 5211978, at *31.   On

July 14, 2015, the First Circuit recalled its mandate, vacated its opinion and judgment, vacated

this Court's preliminary-injunction order, and remanded to this Court for further consideration in

light of *Reed*.

    While Plaintiffs were pursuing their rights before the Supreme Court, they pressed

forward in litigation before this Court.   In preparing their cases, Plaintiffs were faced with the

novel and demanding test initially articulated by the First Circuit for facial challenges in First

Amendment cases, which required Plaintiffs to "show the relative likely frequencies of the

ordinances' controversial versus obviously acceptable applications in the circumstances

specified."   755 F.3d at 74.[1]   Plaintiffs argued that this standard should not control in light of the

Supreme Court's intervening decision in *McCullen v. Coakley*, 134 S. Ct. 2518 (2014), but

Plaintiffs also had to prepare their case to satisfy the First Circuit's initial standard in the event

that their legal argument based on *McCullen* did not prevail.   Accordingly, Plaintiffs engaged in

extensive discovery and research efforts, which included deposing two Rule 30(b)(6) witnesses,

reviewing and extensively analyzing the City's incident reports and arrest records, and

_____

[1]      This test is no longer the law in the First Circuit.   After the preliminary injunction decision was vacated by
the Supreme Court, the First Circuit (in a case also argued by undersigned counsel) later clarified that plaintiffs may
establish that a law violates the First Amendment on its face if it fails narrow-tailoring review without also having to
show that the law is overbroad.   *See Cutting v. City of Portland*, 802 F.3d 79, 86-87 & n.9 (1st Cir. 2015).

4

researching municipal laws throughout the country to demonstrate the extraordinarily broad sweep of Section 16 and Section 77(a).

Plaintiffs then briefed and argued cross-motions for summary judgment, which included the submission of a detailed statement of undisputed facts based on Plaintiffs' analysis of the available documentary and testimonial evidence as to the sweep of the Ordinances, the interests asserted by the City to justify enactment of the Ordinances, the Ordinances' unintended consequences, and the City's failure to consider less restrictive alternatives. Notably, Plaintiffs conservatively did not move for summary judgment with respect to their as applied claims under the First Amendment, nor their claims under the Equal Protection and Due Process clauses. The City, however, move for summary judgment with respect to every issue in the case, and Plaintiffs were required to oppose that unreasonably broad motion. The City's scorched earth tactic in this regard unnecessarily drove up attorneys' fees and contributed significantly to the amount that Plaintiffs seek in this petition.

Plaintiffs continued to devote substantial time and energy to the case after the summary judgment hearing, including monitoring First Amendment decisions around the country, which resulted in the submission of nine notices of supplemental authority based on significant new First Amendment decisions from the Supreme Court, the First Circuit, and district courts within this district and beyond.

Plaintiffs' considerable litigation efforts ultimately bore fruit. In its November 9, 2015 Order, this Court ruled that Section 16 was a content-based restriction on speech subject to strict scrutiny. 11/9/15 Order at 20-23. This Court held that Section 16 failed strict scrutiny because the law was not the least restrictive means available to satisfy the City's asserted public safety interests. *Id.* at 23-27. Turning to Section 77, the Court determined that the law could not

survive intermediate scrutiny under the First Circuit's *Cutting* decision because its sweeping city-wide restriction was not narrowly tailored to serve any interest in public safety. *Id.* at 28-29. Both of these holdings relied in part upon decisions discussed by Plaintiffs in their notices of supplemental authority.

This Court's ruling vindicates Plaintiffs' claims and advances free speech rights by affirming that governments may not single out disfavored categories of speech for more rigorous restrictions or impose broad restrictions on the use of traditional public forums for basic expressive activities. The issues presented were novel and complex, as evidenced by this Court's initial adverse decision on the motion for preliminary injunction, the First Circuit's initial decision on interlocutory appeal, and the subsequent Supreme Court order vacating the First Circuit's judgment. When the case began there was no directly on point First Circuit or Supreme Court precedent addressing First Amendment challenges to bans on "aggressive" solicitation or proscriptions against the use of traffic islands for expressive activities. This Court's decision, which came after Plaintiffs expended considerable effort and made multiple stops along the appellate ladder, definitively sets forth the limits imposed by the First Amendment on governments seeking to restrict solicitations and other speech in public places.

### B.    Plaintiffs' Fees Are Reasonable

To determine a "reasonable fee award," courts in the First Circuit apply the "lodestar" method, which is "the product of the number of hours appropriately worked times a reasonable hourly rate or rates." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011). Constructing the appropriate "lodestar" involves "establishing the prevailing hourly rate (or schedule of rates) in the community for the performance of similar legal services by comparably credentialed counsel." *Id.* at 16. Plaintiffs' counsel's rates are reasonable under the lodestar

method; indeed, Plaintiffs have voluntarily reduced their counsel's rates and have declined to seek fees for a significant amount of legal work for which counsel would customarily be entitled to compensation.

1.    Counsel's Fee Petition Is Based on Competitive Massachusetts Rates, Accounting for the Complexity of the Legal Work Involved

Plaintiffs achieved a complete victory in this Court, due in large measure to the specialized expertise and extensive experience in First Amendment law that Plaintiffs' counsel brought to bear in representing Plaintiffs.  Over the last three years, Goodwin Procter and the ACLU of Massachusetts have been at the forefront in litigating constitutional challenges to municipal ordinances restricting protected speech.  In fact, Goodwin Procter attorneys involved in this case have represented politicians, political activists, and the indigent in asserting First Amendment rights in the face of speech restrictions enacted in Portland, ME, Lowell, MA, Tampa, FL, and Henrico County, VA (Richmond).[2]  Given the complexity of this matter (indeed, it was resolved only after the Plaintiffs sought relief from both the First Circuit and the Supreme Court), the selection of Goodwin Procter and its expertise for this representation, rather than a smaller firm or one in the Worcester area, was reasonable and contributed to the successful result for Plaintiffs in this case.

Plaintiffs' counsel achieved cost savings and efficiencies in this case by leveraging their expertise in the First Amendment issues that were presented here, including by staffing the litigation team with attorneys—such as Mr. Martin, Mr. Burgess, Mr. Daniels, Mr. Segal, and Ms. Wunsch—who are actively litigating similar First Amendment challenges in other federal

---

[2]    *See McLaughlin v. City of Lowell*, No. 1:14-cv-10270-DPW (D. Mass. Oct. 23, 2015); *Homeless Helping Homeless, Inc. v. City of Tampa*, No. 8:15-cv-01219-SDM-EAJ (M.D. Fla.); *Cutting v. City of Portland*, No. 2:13-cv-359-GZS, 2014 WL 580155 (D. Me. Feb. 12, 2014); *Cutting v. City of Portland*, 802 F.3d 79 (1st Cir. 2015); *Reynolds v. Middleton*, 779 F.3d 222 (4th Cir. 2015).

courts, and by relying on existing work product where reasonable.  Moreover, wherever possible, work on the case was performed by attorneys with the lowest billable rate, and each attorney contributed productive, non-duplicative hours towards achieving justice for Plaintiffs.  This strategic and prudent staffing achieved significant cost-saving efficiencies.

In light of the important constitutional issues at stake and this Court's ruling in Plaintiffs' favor, Plaintiffs' counsel are entitled to their reasonable fees for realizing this outcome.  In addition, Plaintiffs are entitled to reasonable fees for time spent preparing this fee petition, and Plaintiffs will submit their request for these additional fees in a supplemental filing.  *See Sullivan v. City of Augusta*, 625 F. Supp. 2d 28, 48-49 (D. Me. 2009) (reimbursing Plaintiffs' counsel for all 40.3 hours of work billed towards litigating the fee request); *see also Love v. Mayor of Cheyenne*, 620 F.2d 235, 237 (10th Cir. 1980) (holding that plaintiff is entitled to attorneys' fees for work done on appeal and for work done in resolving a fee issue dispute).

Together with this fee petition, Plaintiffs submit the declaration of Michael Barton verifying that the rates by which counsel's fees have been calculated reflect discounted Boston, Massachusetts, rates for legal work of attorneys with similar skills, experience and reputation. As described below, the rates sought for each Goodwin Procter and ACLU attorney are in line with rates approved by this and other courts in Massachusetts, adjusted for changes in the market over the last six to eight years.  *See, e.g.*, *Applewood Props., Inc. v. Signature Bldg. Sys., Inc.*, No. 07-40002-TSH, 2011 WL 1155478, at *1 n.3 (D. Mass. Mar. 24, 2011) (finding reasonable, in 2011, hourly rates of $600 for an experienced senior partner, $300 for an experienced senior associate, and $250 for an experienced in-house counsel).  The rates Plaintiffs' counsel seek also reasonably reflect the novelty and complexity of the issues raised in the litigation, in which Plaintiffs successfully litigated from this Court all the way to the Supreme Court and back again.

8

*See, e.g.*, *Ford v. Bender*, No. 07-11457-JGD, 2015 WL 5074473, at *9 (D. Mass. Aug. 27, 2015); *Rosie D. ex rel. John D. v. Patrick*, 593 F. Supp. 2d 325, 332 (D. Mass. 2009).   As discussed below, Plaintiffs are not seeking fees for administrative or ministerial tasks performed by any attorney, and therefore the use of different rates for particular types of tasks is not necessary.  Further, Plaintiffs have applied a 20 percent discount to Goodwin Procter's standard rate for the purpose of this fee petition.  Martin Aff. ¶ 7.

Kevin Martin, one of the chairs of Goodwin Procter's Appellate Practice Group, has extensive courtroom experience, having argued numerous cases before federal and state courts of appeal and briefed more than 40 cases before the United States Supreme Court and other federal, state, and foreign appellate courts, and tried more than 20 cases before courts or arbitrators. Martin Aff. ¶ 9 & Ex. C.   Before beginning his appellate practice at Goodwin Procter, Mr. Martin clerked for Justice Antonin Scalia of the U.S. Supreme Court and Judge Laurence Silberman of the District of Columbia Circuit. *Id.*  Mr. Martin has served as lead counsel in five cases in which he and other Goodwin Procter attorneys have brought constitutional challenges on behalf of *pro bono* clients whose First Amendment rights, much like Plaintiffs' here, have been infringed by impermissible speech restrictions.   Martin Aff. ¶ 8.  The $640 to $680 hourly rate Plaintiffs seek for Mr. Martin's time is reasonable, and is 20 percent lower than Mr. Martin's standard rate over the relevant period.

Mathew Segal is Legal Director of the ACLU of Massachusetts.  Mr. Segal has particular expertise and experience in First Amendment law and in the criminalization of poverty. *See, e.g.*, *United States v. Mehanna*, 735 F.3d 32 (1st Cir. 2013) (amicus brief concerning First Amendment implications of terrorism prosecution); *United States v. Moore*, 666 F.3d 313 (4th Cir. 2012) (holding that federal courts may not order indigent criminal defendants to repay the

costs of their court-appointed attorneys); *Commonwealth v. Magadini*, SJC-11874 (Mass. argued Dec. 7, 2015) (amicus brief concerning whether the necessity defense is available when a homeless person trespasses to escape bitter cold); *Commonwealth v. Walters*, 37 N.E.3d 980 (Mass. 2015) (amicus brief concerning First Amendment implications of anti-stalking law); *Commonwealth v. Lucas*, 34 N.E.3d 1242 (Mass. 2015) (amicus brief concerning First Amendment implications of ban on false speech relating to political campaigns). *See* December 23, 2015 Affidavit of Matthew Segal ¶¶ 11-13. In light of his expertise in First Amendment law and experience litigating such constitutional claims, the $625 hourly rate Plaintiffs seek for Mr. Segal's time is reasonable and in line with adjusted prevailing Massachusetts rates.

Sarah Wunsch is Deputy Legal Director of the ACLU of Massachusetts. She has extensive experience litigating citizens' free speech rights, including serving as the lead attorney in *Benefit v. City of Cambridge,* 679 N.E.2d 184 (Mass. 1997), in which the Supreme Judicial Court struck down a Massachusetts law making it a crime to beg. *See* December 16, 2015 Affidavit of Sarah Wunsch ¶¶ 2, 7. Ms. Wunsch's particularized First Amendment expertise justifies the $750 hourly rate Plaintiffs seek for her time and is in line with adjusted prevailing Massachusetts rates.

Yvonne Chan is a litigation partner in Goodwin Procter's Boston office. Ms. Chan has eight years of experience handling complex civil litigations. Martin Aff. ¶ 10 & Ex. D. The $488 to $588 hourly rate Plaintiffs seek for Ms. Chan's time is reasonable, and is 20 percent lower than Ms. Chan's standard rate over the relevant period.

Brian Burgess is a litigation associate in Goodwin Procter's Washington, D.C. office. Before beginning his practice at Goodwin Procter, Mr. Burgess clerked for Justice Sonia Sotomayor of the U.S. Supreme Court, Judge David Tatel of the District of Columbia Circuit,

and Judge Guido Calabresi of the Second Circuit.  Since joining Goodwin Procter, Mr. Burgess has been involved in First Amendment challenges to ordinances on behalf of *pro bono* clients in Portland, ME, Tampa, FL, and Henrico County, VA (in which he presented oral argument to the Fourth Circuit in a successful appeal).  *Id.* ¶ 12 & Ex. F.  The $408 to $520 hourly rate Plaintiffs seek for Mr. Burgess's time is reasonable, and is 20 percent lower than Mr. Burgess's standard rate over the relevant period.

As verified in the attached affidavits, the rates used to calculate the lodestar for the work done by each other associate in this case reflects Massachusetts rates for work done by associates with the same level of experience.  The $332 to $508 hourly rates Plaintiffs seek for Joshua Daniels—who also represented the plaintiffs who successfully challenged Portland, ME's median strip ordinance, *id.* ¶ 11—and Todd Marabella align with Massachusetts rates, reflect their specialized constitutional law and litigation expertise, and are 20 percent lower than their standard rates.  The $284 to $428 hourly rates used to calculate time for Danielle Bart, Alexandra Lu, Kate MacLeman, and Margaret Sullivan also are reasonable under adjusted prevailing Massachusetts rates and are 20 percent lower than their standard rates.  *Id.* ¶¶ 14-17.

Finally, a note about staffing.  While this petition reflects that several lawyers worked on this case during the more than two years it was pending, the case required an extraordinary level of effort and it would be unreasonable to expect attorneys in private practice to dedicate themselves nearly full time on a *pro bono* basis.  Individual tasks were distributed among team members in an effort to avoid any small number of team members taking on too heavy a *pro bono* caseload.  *See Gay Officers Action League v. Puerto Rico*, 247 F. 3d 288, 297-98 (1st Cir. 2001) (upholding award of fees where case was staffed with multiple attorneys but tasks were divided).  Certain team members had clearly defined roles, from briefing and motion practice,

11

including appellate briefing and argument at the First Circuit and Supreme Court (accounting for much of the time spent on this matter by Mr. Martin and Ms. Chan, and most of the time spent by Mr. Burgess, Mr. Daniels, and the ACLU lawyers), to fact discovery, including offensive and defensive depositions, and the more fact-intensive aspects of summary judgment briefing (accounting for much of the time spent by Mr. Marabella, Ms. Bart, Ms. Lu, Ms. MacLeman, and Ms. Sullivan).  To the extent there were any inefficiencies as a consequence of these staffing practices, they were counterbalanced by the efficiencies described above, and the voluntary reductions in hours and rates discussed in the following section.

 2. Counsel Have Voluntarily Reduced the Fees They Are Seeking

Plaintiffs have voluntarily made significant reductions in the hours of attorney time for which they seek fees, even though such fees are compensable and reflect attorney work that contributed directly to the success of Plaintiffs' case.  The value of the time spent by Goodwin Procter attorneys on this case, as measured by the firm's market hours, is $1,974,873.50.  This amount has been reduced significantly for purposes of this fee petition.  As an initial matter, as noted above, Plaintiffs have voluntarily applied a 20% reduction to the rates customarily charged by Goodwin Procter attorneys.  Martin Aff. ¶ 7.

In addition, Plaintiffs are not seeking fees for several categories of work that was performed by the Goodwin Procter team and that aided in achieving the favorable result in this case.  For example, Mr. Thayer's and Ms. Brownson's homeless status necessitated additional attorney travel time to and from Worcester to review documents and speak with them as opposed to other forms of communications (*e.g.*, phone calls and e-mail); however, Plaintiffs are not seeking fees in connection with any attorney travel time even though this time is compensable and Plaintiffs' Boston-based counsel used their trips to Worcester to appropriately engage with

12

their clients.  Martin Aff. ¶ 5; *see Hutchinson*, 636 F.3d at 15 ("[t]ravel is often a necessary incident of litigation" and "may be reimbursed in a fee award").

Plaintiffs are also not seeking fees for time spent on geomatics experts (experts in mapping downtown areas) that were ultimately not retained and motions that were not filed.  For example, Plaintiffs had intended to file a motion to strike the City's jury demand prior to trial, but this motion was made unnecessary by the Court's decision and therefore Plaintiffs are not seeking fees for work related to the motion.  Martin Aff. ¶ 5.  Plaintiffs' counsel also spent time working with and identifying other potential experts, but because expert discovery was ultimately not conducted, recovery for that time is not being sought in this submission.  *Id.*

In addition, although much of the litigation strategy in this case was developed during weekly team meetings attended by the Goodwin Procter team, Plaintiffs have not sought fees related to these regular meetings, and instead have limited this fee petition to those meetings that were convened for a specific purpose (*e.g.*, to discuss appellate strategy following this Court's decision on preliminary injunction).  *Id.*  Plaintiffs are also not seeking fees for the time spent by team members other than Mr. Martin and Ms. Chan in attending hearings, oral arguments, and status conferences in this case.  *Id.*  In addition, Plaintiffs have excluded administrative or ministerial tasks, or tasks that did not require as much legal analysis, such as the preparation of hearing materials, proofreading and cite-checking briefs prior to filing, and the monitoring of case alerts for new developments in this area (which led to multiple notices of supplemental authority being filed with this Court).  *Id.*

Further, the result in this case was achieved with the help of several other Goodwin Procter partners who reviewed and provided feedback on trial court and appellate briefs, helped develop Plaintiffs' litigation strategy, and participated as judges in moot courts before the oral

13

arguments in this Court and the First Circuit. *Id.* These partners have active litigation and appellate practices and extensive experience arguing motions before state and federal appeals courts as well as the United States Supreme Court. The fee request excludes the time spent by these partners, which resulted in a major reduction in the hours spent on this case, particularly the hours spent strategizing and preparing for oral argument.

Finally, Plaintiffs have excluded all time spent by Goodwin Procter attorneys on administrative or logistical matters (*e.g.*, preparing materials for hearings) as well as all time spent by Goodwin Procter paralegals, Goodwin Procter court procedure attorneys, and ACLU of Massachusetts Field Coordinator Chris Robarge. *Id.*; Segal Aff. ¶¶ 4, 26. Goodwin Procter's paralegals and court procedure attorneys provided assistance on the case by reviewing and proofing filings. Martin Aff. ¶ 5. Mr. Robarge, who worked as a paralegal in this case under the supervision of ACLU of Massachusetts attorneys Matthew Segal and Sarah Wunsch, has worked on this matter over a longer period than anyone else. Before the litigation began, Mr. Robarge devoted substantial time toward persuading officials in Worcester not to pass anti-panhandling ordinances because doing so would be unwise and potentially unconstitutional. This litigation occurred—and thus this fee petition exists—because the City did not heed Mr. Robarge's advice. Once the litigation began, Mr. Robarge devoted numerous hours toward maintaining contact with the homeless plaintiffs. Segal Aff. ¶ 26.

For each time entry in this matter for which Plaintiffs are seeking attorneys' fees, Exhibit 1 notes the number of hours that were actually worked, and the number of hours that are subject to this fee petition. After excluding the categories of time described above and applying the 20% discount, the fees in this case have been reduced from $1,974,873.50 to $967,689.60.

Finally, to summarize, below are the Goodwin Procter attorneys whose time is being included as part of this fee petition, their standard and discounted rates, the number of hours for each attorney being included in this petition, and the discounted value of those hours.

| Attorney | Standard Rate | Discounted Rate | # of Hours | Discounted Value of Hours |
|---|---|---|---|---|
| Kevin Martin | $800 (2013) | $640 | 353.3 | $234,507.20 |
| | $835 (2014) | $668 | | |
| | $850 (2015) | $680 | | |
| Yvonne Chan | $610 (2013) | $488 | 346.1 | $178,742.00 |
| | $660 (2014) | $528 | | |
| | $725 (2015) | $580 | | |
| Joshua Daniels | n/a | n/a | 70.8 | $34,088.00 |
| | $635 (2014) | $508 | | |
| | $595 (2015) | $476 | | |
| Brian Burgess | $510 (2013) | $408 | 197.2 | $98,204.00 |
| | $580 (2014) | $464 | | |
| | $650 (2015) | $520 | | |
| Todd Marabella | $415 (2013) | $332 | 525.0 | $214,657.60 |
| | $510 (2014) | $408 | | |
| | $585 (2015) | $468 | | |
| Kate MacLeman | $355 (2013) | $284 | 81.7 | $26,372.40 |
| | $435 (2014) | $348 | | |
| | $535 (2015) | $428 | | |

| Danielle Bart | n/a | n/a | 236.0 | $81,902.40 |
| | $375 (2014) | $300 | | |
| | $465 (2015) | $372 | | |
| Alexandra Lu | n/a | n/a | 130.4 | $41,126.00 |
| | $375 (2014) | $300 | | |
| | $400 (2015) | $320 | | |
| Margaret Sullivan | n/a | n/a | 184.4 | $58,090.00 |
| | $375 (2014) | $300 | | |
| | $400 (2015) | $320 | | |

## II.    LITIGATION EXPENSES

"It is settled . . . that reasonable expenses, necessary for the prosecution of a case, are ancillary to and may be incorporated as part of a fee award" that plaintiffs are entitled to under a fee-shifting statute.  *Hutchinson*, 636 F.3d at 17; *see also Cushing v. McKee*, 853 F. Supp. 2d 163, 176-77 (D. Me. 2012) (allowing "reasonable out-of-pocket expenses in conjunction with the fee award).  In this case, Plaintiffs are not seeking all of their reasonable, ancillary expenses, but instead have limited themselves to amounts paid to certain categories of third-party vendors, specifically: court filing fees, court reporters, transcript services, and specialized printing services necessary for the U.S. Supreme Court filing.  Plaintiffs' counsel's expenses, for which they are seeking an award of costs (which, as with the time for which they are seeking fees, are not the full amount of their expenses) are $9,783.59.

## CONCLUSION AND SUMMARY

Plaintiffs respectfully seek payment from the City for the following attorneys' fees and

litigation expenses:

| | |
|---|---|
| Goodwin Procter Attorney fees:<br>(applying across the board a 20% discount to hourly rates) | $967,689.60 |
| Attorneys' fees of Attorney Segal: | $31,875.00 |
| Attorneys' fees of Attorney Wunsch: | $16,875.00 |
| Costs: | $9,783.59 |
| **Total:** | $1,026,223.19 |

*See* Martin Aff., Exs. A and J; December 23, 2015, Affidavit of Matthew Segal, Ex. A;

December 16, 2015, Affidavit of Sarah R. Wunsch, Ex. A.

Dated: December 23, 2015                    Respectfully submitted,

                                            /s/ Kevin P. Martin
                                            Kevin P. Martin (BBO# 655222)
                                            Mark E. Tully (BBO# 550403)
                                            Yvonne W. Chan (BBO# 669223)
                                            Todd Marabella (BBO# 682525)
                                            GOODWIN PROCTER LLP
                                            53 State Street
                                            Boston, Massachusetts 02109
                                            Tel.: 617.570.1000
                                            Fax.: 617.523.1231
                                            KMartin@goodwinprocter.com
                                            MTully@goodwinprocter.com
                                            YChan@goodwinprocter.com
                                            TMarabella@goodwinprocter.com

Matthew R. Segal (BBO# 654489)
Sarah R. Wunsch (BBO# 548767)
American Civil Liberties Union
   of Massachusetts
211 Congress Street
Boston, Massachusetts 02110
Tel.: 617.482.3170
Fax.: 617.451.0009
MSegal@aclum.org
SWunsch@aclum.org

*Attorneys for Plaintiffs Robert Thayer, Sharon*
*Brownson, and Tracy Novick*

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin P. Martin, hereby certify that the following documents are being filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on December 23, 2015: Affidavit of Sarah Wunsch, Affidavit of Matthew Segal, Affidavit of Kevin P. Martin, Memorandum of Law in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Litigation Expenses, and Plaintiffs' Motion for Award of Reasonable Attorneys' Fees and Litigation Expenses.  These documents will be available for viewing and downloading from the ECF system.

<u>/s/ Kevin P. Martin</u>

Kevin P. Martin