### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT THAYER, SHARON BROWNSON, and TRACY NOVICK, <br> Plaintiffs, <br><br> v. <br><br> CITY OF WORCESTER, <br> Defendant. | CIVIL ACTION <br> No. 13-40057-TSH |

### MEMORANDUM OF DECISION AND ORDER
**March 29, 2017**

**HILLMAN, D.J.**

### Background

In January of 2013, the City of Worcester ("City") adopted two ordinances aimed at controlling aggressive panhandling.  Specifically, the City of Worcester Revised Ordinances of 2008, as amended through February 5, 2013 ("R.O.") ch. 9, §16 ("Ordinance 9-16") made it " ... unlawful for any person to beg, panhandle or solicit in an aggressive manner."  R.O.  ch. 13, § 77(a)("Ordinance 13-77," and together with Ordinance 9-16, the "Ordinances") prohibited standing or walking on a traffic island or roadway except for the purpose of crossing at an intersection or crosswalk, or entering or exiting a vehicle or "for some other lawful purpose." On May 31, 2013, the Plaintiffs, Robert Thayer ("Thayer"), Sharon Brownson ("Brownson") and Track Novick ("Novick") brought suit against the City seeking declaratory and injunctive relief and monetary damages.  On October 24, 2013, I issued an Order denying Plaintiffs' motion for a

preliminary injunction. *See Mem. of Dec. and Order on Pl's Mot. for Prel. Inj.* (Docket No. 32).

Plaintiffs appealed the denial of their request for injunctive relief to the First Circuit, which

affirmed my Order, except as to Ordinance 9-16's proscription on nighttime solicitation.  *See*

*Thayer v. City of Worcester*, 755 F.3d 60 (1st Cir. 2014), *vacated, Thayer v. City of Worcester*,

576 U.S.—, 135 S.Ct. 2887 (2015).   Plaintiffs then filed a petition for writ of certiorari seeking

review in the Supreme Court of the United States.  On June 29, 2015, the petition for writ of

certiorari was granted, the judgement of the First Circuit was vacated and the matter remanded

for further consideration in light of *Reed v. Town of Gilbert*, 576 U.S. —, 135 S.Ct. 2218 (2015).

On July 14, 2015, the First Circuit subsequently vacated its opinion and judgment and remanded

the matter to this Court.  On November 9, 2015, I issued a Memorandum of Decision and Order

(Docket No. 120) finding in favor of the Plaintiffs on the parties' cross-motions for summary

judgment. Judgement entered in favor the Plaintiffs on that same date. *See* Docket No. 122.

This Memorandum of Decision and Order addresses Plaintiffs' Motion For Award of

Attorney's Fees And Litigation Expenses (Docket No. 126).  For the reasons set forth below, that

motion is *granted*, in so far as Plaintiffs shall be awarded attorneys' fees and costs, but *denied* as

to the amount requested.

## Discussion

Plaintiffs seek attorneys' fees in the amount of $1,016,439.60 and total costs of $9,783.59

in connection with the underlying proceedings, and an additional $16,888.00 for preparing their

fee petition, for total attorneys' fees and costs of $1,043,111.19. Defendant asserts that the

Plaintiffs' fee petition should be denied is so far as the amount of fees sought is excessive,

duplicative, and punitive. More specifically. Defendant asserts that the fees and expenses

charged by Plaintiffs' legal team are "wholly disproportionate to the billable rate in the

Worcester area, as well as to the nature and outcome of the case, an alleged theoretical First Amendment violation that was resolved at summary judgment." *Def's Opp. To Pls' Mot. For Attorneys' Fees And Expenses* (Docket No. 135).

## *Legal Standard*

Having prevailed on their Section 1983 claim that the Ordinances unconstitutionally restricted their right to freedom of speech, the Plaintiffs are presumptively entitled to recover their reasonable attorneys' fees, "'unless special circumstances would render such an award unjust.'". *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008); *see also* 42 U.S.C. §1988(b)(in any Section 1983 action, court in its discretion may allow prevailing party reasonable attorneys' fee as part costs). What constitutes a reasonable attorneys' fee:

> typically is determined through the lodestar method, which involves multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure. In fashioning the lodestar, [the] court may adjust the hours claimed to eliminate time that was unreasonably, unnecessarily, or inefficiently devoted to the case. Subject to principles of interconnectedness, the court may disallow time spent in litigating failed claims. It also may adjust the lodestar itself, upwards or downwards, based on any of several different factors, including the results obtained and the time and labor actually required for the efficacious handling of the matter. Reasonableness in this context is largely a matter of informed judgment. There are, however, guideposts in the case law. For instance, a district court may deem an expenditure of time unreasonable if the reported hours are 'excessive, redundant, or otherwise unnecessary.' By like token, it may discount or disallow the total hours claimed if it determines that the time is insufficiently documented.

*Id.* (internal citations and citations to quoted case omitted).  After passing on the reasonability of the time expended by the attorneys, the Court must determine the appropriateness of the rates charged. *Id.*

In determining an objectively reasonable award based on the work of Plaintiffs' attorneys, the Court has reviewed the pretrial, trial and post-trial record of this case, including the affidavits and billing records submitted by Plaintiffs in support of their application for fees and

costs. Considering these materials and the arguments of the parties, the Court will apply the lodestar method, making appropriate adjustments in light of the factors outlined by the First Circuit.

<u>*Whether the Time Spent And Fees Charged Were Appropriate*</u>

Plaintiffs' attorneys provided able representation throughout the course of these proceedings. Moreover, there is no question that, having received a judgement in their favor that granted them the entirety of the relief they requested, Plaintiffs are entitled to an award of attorneys' fees and costs.   The amount of costs and attorneys' fees to which they are entitled, however, is a highly disputed between the parties.

Plaintiffs' legal team consisted of *eleven* attorneys *nine* from the Boston law firm of Goodwin Procter LLP and two from the American Civil Liberties Union ("ACLU").[1]   The attorneys from Goodwin Procter LLP ("Goodwin attorneys") billed at the following rates: (1) Kevin Martin, a senior level attorney (partner)-- $640-$680 per hour; (2) Yvonne Chan, a senior level attorney (partner)-- $488-$580 per hour; (3) Brian Burgess, a mid to senior level attorney (senior associate)-- $408-$520 per hour; (4) Joshua Daniels—mid level attorney (senior associate)-- $476-$508 per hour; and (5) Todd Marabella  (associate), Danielle Bart  (associate), Alexandra Lu (associate), Kate MacLeman (associate), Margaret Sullivan (associate)-- $284-$468 per hour.  As to the attorneys for the ACLU ("ACLU attorneys"), Matthew Segal, Legal

---

[1] Plaintiffs' request for attorneys' fees and costs is summarized in the table below:

| Reimbursement Sought | Amount |
|---|---|
| Goodwin Proctor Attorneys' Fees (including fees incurred filing the petition) | $984,577.60 |
| ACLU Attorney Segal's Fees | $31,875.00 |
| ACLU Attorney Wunsch's Fees | $16,875.00 |
| Costs | $9,783.59 |
| **Total** | **$1,043,111.19** |

Director of the American Civil Liberties Union Foundation of Massachusetts ("ACLUM"), a senior level attorney, is requesting reimbursement of $625 per hour ("in an exercise of billing judgment"), and Sarah Wunsch, Deputy Director ACLUM, a senior level attorney, seeks reimbursement at the hourly rate of 750.00 per hour, which she asserts is reasonable in light of current rates in the Boston area for attorneys with her experience.

Plaintiffs argue that the rates charged by the Goodwin and ACLU attorneys are competitive.  The Goodwin attorneys' rates reflect the "discounted Boston, Massachusetts rates for legal work of attorneys with similar skills, experience and reputation." They further argue that this case involved novel and complex legal issues and all of the attorneys' rates reflect their "expertise" in First Amendment cases.  I disagree.  While the Ordinances at issue in this case did raise some new legal theories and arguments regarding a municipality's right to limit *aggressive* panhandling and signage/congregating on public property, in reality, the litigation simply involved a new spin on the age old conflict between freedom of speech and a municipality's right to limit speech in the name of public safety.  As such, the issues were not unduly novel or complex. Additionally, while Plaintiffs assert that the rates charged are reasonable and reflect a "discount," I find that they are *far* in excess of any reasonable rate that would be charged in the *Worcester* area for this type of case.  Moreover, while Goodwin Procter LLP and some of the Goodwin attorneys who worked on this case are experienced in litigating First Amendment cases, many of them  had little to no such experience—at least not enough to warrant suggesting that their "expertise" supports the rates charged[2].

---

[2] Plaintiffs' suggest that the four other similar cases that many of these attorneys were working *contemporaneously (if not simultaneously)* to this case makes them experienced First Amendment litigators. Given the *obvious* disconnect inherent in this proposition, the Court finds the Plaintiffs' position disingenuous and unworthy of further comment.

Accordingly, I am reducing the hourly rate charged by the attorneys to reflect the rates which would be charged by attorneys with comparable experience in the Worcester/Central Massachusetts. *See Fryer v. A.S.A.P. Fire & Safety Corp.*, 750 F.Supp.2d 331, 339 (D.Mass. 2010)(to determine reasonable hourly rate, court applies prevailing rates in community taking into account qualifications, experience and specialized competence of attorneys involved; relevant community is that where court sits); *Parker v. Town of Swansea*, 310 F.Supp.2d 376, 388 (D.Mass. 2005)(noting relevant community is Boston, where court sits). The Goodwin attorneys rates will, therefore, be reduced as follows: senior attorneys (Martin and Chan)  shall be reduced to $400.00 per hour for Martin and $350.00 per hour for Chan; Burgess, who I find to be a mid to senior level attorney, shall be reduced to $250.00 per hour; Daniels and Marabella, who are mid-level associates, shall be reduced to $225.00 per hour; and  Bart, Lu, MacLeman and Sullivan who are junior level associates, shall be reduced to $200.00 per hour.  I am also reducing the rates charged by the ACLU attorneys as I find that their expertise and experience did not warrant the hourly rates charged by them as such rates are far in excess of rates charged by attorneys of similar experience for similar cases in the *Worcester* area: Wunsch's rate shall be reduced to $375.00 per hour and Segal's rate shall be reduced to $350.00 per hour.  Accordingly, the Court starts with the following presumptive award of attorneys' fees:  Goodwin attorneys $572,190.00 and ACLU attorneys $24,572.50.

The next question becomes whether the amount of time which each lawyer spent on the case was warranted. The court must calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933 (1983)(court should exclude hours not reasonably expended); *see also Grendel's Den, Inc. v. Larkin*, 749 F.2d

6

945, 950 (1st Cir. 1984).  The inquiry typically starts with the attorney's "contemporaneous

billing records" however, "the court's discretion is by no means shackled by those records."

*Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295-96 (1st Cir. 2001).  Additionally,

the court should examine the record to see if "'counsel substantially exceeded the bounds of

reasonable effort.'"  *United States* v. *Metropolitan Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir. 1988)

(citation to quoted case omitted).  The court is also justified in disallowing or discounting

requests if the records are "too generic and, thus, insufficient as a practical matter to permit a

court to answer questions about excessiveness, redundancy, and the like." *Torres-Rivera v.

O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008).

To support the reasonableness of their request, Plaintiffs point out that they are not

seeking fees associated with: travel from Boston to Worcester; time spent on geomatics experts;

litigation strategy meetings; attending hearings, oral arguments, and status conferences (besides

Chan and Martin); and ministerial or administrative tasks.  Additionally, Plaintiffs note they are

not charging for the help of other Goodwin Procter LLP partners in preparing for litigation.

Finally, Plaintiffs note that they are not seeking fees for time spent by Goodwin paralegals,

attorneys participating only in administrative, logistical or procedural matters, or the ACLU

paralegal. While this and other courts consider this type of "self-pruning" when determining

whether the reasonableness of attorneys' fees, in this particular case, I am not persuaded that

Plaintiffs' attorneys made a concerted effort to, as the saying goes, separate the wheat from the

chaff.  *See Rosie D. ex rel. John D. v. Patrick,* 593 F.Supp.2d 325, 332 (D.Mass.2009) (noting

"self-pruning" of time that may be redundant, time spent by support staff, and time not directly

relating to the case may confirm most of the hours expended are reasonable, necessary and

neither excessive nor duplicative); *Hutchinson ex rel. Julien v. Patrick,* 636 F.3d 1, 15 (noting

district court's consideration of "self-pruning" was understandable).   More specifically, the

Court is not persuaded by the fact that Goodwin Procter LLP did not charge for partners and

other attorneys that provided input in addition to the *nine* attorneys already working on the case.

The Court is also not impressed by Goodwin Procter LLP's not seeking fees for geomatics

experts and other experts who were consulted but never used *and for motions never filed*.

Additionally, I have reviewed the Goodwin attorneys' time sheets in detail. First, in order

to justify the use of nine attorneys, which on the surface may be perceived as overstaffing,

Plaintiffs point out that when taking cases *pro bono*, even attorneys from a large firm cannot be

expected to devote themselves to the case full-time. While the Court recognize this reality, I am

troubled by the manner in which the attorneys were utilized in this case.   Contrary to Plaintiffs'

suggestion, substantially more hours were incurred by higher billing, more senior attorneys, with

much of the hours spent related to research and writing initial drafts-- tasks which could have

fallen to less senior attorneys. For example, a substantial amount of the over 300 hours incurred

by Ms. Chan involved researching and drafting most of the initial memoranda, pleadings and

motions. Many of these documents were then reviewed and revised by Mr. Martin, *another*

*partner*. Moreover, despite bringing on Messrs. Burgess and Daniels as experts on appeals, Ms.

Chan was tasked with drafting and reviewing many of the appellate briefs.

This case was staffed by nine attorneys of different experience and billing levels,

including partners, mid-level/senior associates and junior associates.   I would have expected

much of the drafting and research to have been done by senior to lower level associates, whose

work would then be reviewed and edited by more senior attorneys. In making this observation, I

note that divvying up *pro bono* work will often necessarily result in more senior level attorneys

doing work normally done by more junior attorneys who, for obvious reasons, the firm may

afford only a limited amount of time to devote to such matters.  However, the resulting higher cost of conducting the litigation should not then be shifted to the adversary in a fee award case such as this. Instead, the rates charged by senior level attorneys doing work normally done by lower level attorneys should be reduced accordingly. No such adjustment was made in this case. Also troubling to the Court is that Ms. Chan, an experienced litigator, charged for over thirty hours of preparation for the hearing on the preliminary injunction and over twenty hours preparing for the summary judgment hearing, including hours spent on mock hearings. Mr. Martin, also an experienced litigator, charged over thirteen hours for preparing for the summary judgment hearing and "holding moot court."  The significant time spent in preparation and holding mock hearings should have been among the first cuts had Plaintiffs made a serious effort to "self-prune" their fees and costs. Finally, given the number of attorneys utilized, while the amount of overlap and duplicative effort was kept to a minimum, it was not eliminated. For these reasons, the Court further finds a reduction of the fees charged is warranted. Accordingly, I am further reducing the Goodwin attorneys' fees charged in Plaintiffs' fee request by fifteen percent (15%), to $486,361.50.

The ACLU attorneys assert that they significantly reduced their fee by not charging for approximately half the work they performed. I commend the ACLU attorneys for making a concerted effort to seek reimbursement only for those hours which were reasonably expended and necessary. Nevertheless, reviewing the work for which they do seek reimbursement and given their role, which as pointed out by Defendant was primarily as consultants, I find that a further reduction is warranted.  More specifically, there are a number of instances where the ACLU attorneys' work is duplicative of the Goodwin attorneys. Additionally, the Defendant should not be responsible for paying for the ACLU's contemplation of filing an amicus brief

with the Supreme Court and consulting with others about doing the same, nor should the Defendant be responsible for reimbursing the Plaintiffs for a 1.3 hour conference call regarding with other ACLU affiliates regarding panhandling in Idaho and elsewhere, or drafting e-mails to legal luminaries. As discussed more fully below, charging full rates for preparation and review of a fee petition is unwarranted. For these reasons, I am further reducing the ACLU attorneys' fees charged in Plaintiffs' fee request by five percent (5%) to $23,343.88.

### *Plaintiffs' Request for Reimbursement For Preparing Fee Petition*

The Plaintiffs filed a supplemental memorandum, requesting reimbursement for the time spent preparing the motion for attorneys' fees and costs; they seek reimbursement in the amount of $16,888.00.  The Court has spent more time than was warranted going through Plaintiffs' petition for attorneys' fees and costs and supporting documentation. Had the Plaintiffs spent more time engaging in the "self-pruning" analysis referred to previously rather than attempting to justify their excessive fee request, far less time and resources would have been expended by them, the Defendant and the Court in analyzing their request.   Moreover, in a previous case before this Court issued before the Plaintiffs filed their motion for attorneys' fees and costs, the ACLU and their co-counsel (which were private counsel from firms other than Goodwin Procter LLP) were admonished for charging more than a minimal rate for preparing a fee petition. *See Cocroft v. Smith,* 148 F.Supp.3d 57, 62 (D.Mass. 2015).  Despite that clear admonition, the Goodwin attorneys and one ACLU attorney (Ms. Wunsch) charged their full rates for preparing the fee petition.[3] Under these circumstances, Plaintiffs' request for reimbursement for the time and expense incurred in connection with preparing the fee petition is *denied* in its entirety.

---

[3] ACLU attorney Segal billed his full rate for preparing the fee petition, then opted not to seek reimbursement.

*Costs*

Plaintiffs seek costs in the amount $9,783.59.  I find all of Plaintiffs' costs to be reasonable and reimbursable and therefore, award them the entire amount requested.

*The Award*

This case was an important case which raised and decided important issues of public concern. Plaintiffs prevailed on their First Amendment claim and during the course of the litigation were well represented by experienced litigation attorneys whose ability and commitment are unquestioned. Moreover, the Court's decision is not meant to chastise counsel, nor to be taken as a negative comment on counsel's billing practice. Rather, the Court has a duty to closely examine fee petitions "to balance the need to compensate successful counsel against the need to burden unsuccessful defendants fairly, *but no more.*" *Metropolitan Dist. Comm'n*, 847 F.2d at 20 (emphasis added).  In determining what is a "reasonable fee" in the context of a fee shifting statute, the prevailing party must bear in mind that "a law firm's customary schedule of charges, though entitled to consideration, is not dispositive of the issue: a private client might well be willing to buy a Stradavarius when a Guadagnini would plainly do, or to pay top dollar for either when the same instrument could be purchased less expensively elsewhere. The court must, therefore, turn a realistic eye on the proffered pricing, endeavoring to fashion rates 'adequate to attract competent counsel but which do not produce windfalls to attorneys.'" *Id.,* at 19 (citation to quoted case omitted). Moreover:

> there is no single 'reasonable' fee. The term connotes a range rather than an absolute. As [has been] said in an analogous context, borrowing Emerson's description of nature, reasonableness 'is a mutable cloud, which is always and never the same.' Once this doctrine is accepted, common sense conduces to an obvious conclusion: the law firm's bill need not be swallowed whole by the client's litigation adversary just because it *is* the law firm's bill. That the firm is, as here, highly reputable and well regarded, does not change the equation. The loser cannot be left at the mercy of the winner's lawyers, bound to pay not a

'reasonable' fee, but a fee on the order of what the victor—for whatever reasons—might be willing to tolerate.

*Id.,* at 17.

The Court believes that an award of $509,705.38 in attorneys' fees and $9,783.59 in costs, for a total award of $519,488.97.   The Court finds that this award achieves the appropriate balance between compensating the Plaintiffs' counsel, while at the same time, burdening Defendant in an amount which is fair, "but no more."[4]

### Conclusion

For the foregoing reasons, Plaintiffs' Motion For Award of Attorney's Fees And Litigation Expenses (Docket No. 126) is ***granted***, in part, and ***denied***, in part. The Court awards a total sum of $519,488.97 in attorneys' fees and costs.

**SO ORDERED.**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[4] As support for the reasonableness of their request for over $1,000,000 in costs and fees, Plaintiffs point out that in *McCullen v. Coakley,* Civ.Act. No. 08-10066-GAO, a case in which the Plaintiffs successfully struck down a Massachusetts statute creating a fixed buffer zone around abortion clinics, it was reported in the press that the parties had settled the plaintiffs' claim for attorneys' fees and costs for $1,200,000.00.  A review of the docket shows that *McCullen*, which was argued before the Supreme Court, involved far more extensive motion practice than occurred in this case. The Court finds the parties settlement in *Cutting* v. *City of Portland*, Civ.Act.No. 13-00359-GZS, one of the first amendment cases which Plaintiffs' counsel was pursuing contemporaneously with this case, to be informative.  That case included an evidentiary hearing on the plaintiffs' motion for preliminary injunction and an appeal to the First Circuit, but did not include a petition for writ of certiorari to the Supreme Court or motions for summary judgment. The parties settled the plaintiffs' claim for attorneys' fees and costs in that case for $175,000.00.  While the facts and circumstances of the *McMullen*  and *Cutting* are not squarely on point with this case,  I find that the awards in those cases support the reasonableness of the amount I have awarded in this case.